**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PARTNER & PARTNER, INC.

    Plaintiff,                                    CIVIL ACTION NO. 05-CV-74499

v.                                            HONORABLE DENISE PAGE HOOD

EXXONMOBIL OIL CORP, and

MICHIGAN FUELS, INC.

    Defendants,

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND

**I. BACKGROUND**

This matter is before the court on Defendant ExxonMobil Oil Corp. ("ExxonMobil") and Defendant Michigan Fuels, Inc.'s ("Michigan Fuels") Motion for Summary Judgment. [Docket Nos. 75, 76 ] filed July 16, 2007. Defendants seek dismissal of Plaintiff's breach of contract, antitrust, unjust enrichment and tortious interference claims. Plaintiff Partner & Partner, Inc. ("Plaintiff") filed a response to the Motion for Summary Judgment on Sept. 7, 2007 [Docket No. 80]. Although the response was filed late, the Court will consider it in its analysis because the same arguments were brought up by Plaintiff at oral argument. Plaintiff also filed a Motion to Amend its original complaint on Sept. 14, 2007 [Docket No. 81], seeking to add a fraud in the inducement charge and a Michigan Franchise Investment Law violation claim against

1

Defendants.

**II. FACTS**

Plaintiff is the owner of a Mobil branded gasoline station (the "gas station") on Fenkell Street in Detroit. (Def.'s Mot. for Summary Judgment at 1.) Ali Bazzy is the principal of Plaintiff company and leased the gas station from ExxonMobil in March 2000 pursuant to a Petroleum Marketing Practices Act ("PMPA") Franchise Agreement.[1] *Id.* Plaintiff claims that Defendant promised not to allow another ExxonMobil station to be opened within a one mile radius of his gas station. (Pl's Reply to Def.'s Mot. for Summary Judgment at 2.) Plaintiff asserts that Defendant breached the contract between the two parties when it branded an Exxon station within one mile of Plaintiff's gas station. *Id.* Plaintiff claims that the new gas station significantly hurt his business by increasing competition in the area. *Id.* Defendant claims that it has no "one-mile policy" nor does such a policy exist within the contract between the two parties. (Def.'s Mot. for Summary Judgment at 6.)

Plaintiff started its relationship with Defendant in 2000 with a PMPA Franchise agreement. (Def.'s Mot. for Summary Judgment, Exhibit A, at 6.) The PMPA Franchise Agreement between the two parties explicitly stated that Plaintiff had no "exclusive right in any market or geographic area to sell the Products or conduct any of the [b]usinesses." *Id.* at 7. It also stated that ExxonMobil reserved the right to open new stations at any location of its choice. (Def.'s Mot. For Summary Judgment at 2.) In 2004, ExxonMobil decided to leave the direct-

---

[1] The Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2806, defines and establishes the parameters of acceptable gasoline marketing relationships. (Def.'s Mot. for Summary Judgment, Exhibit A, at 6.)

served market in Detroit electing to no longer sell gas directly to dealers like Plaintiff but to work with distributors who would purchase ExxonMobil gas from the company and then sell it to individual dealers. *Id.* Consequently, ExxonMobil severed all franchise agreements with its dealers through an "Agreement to Mutually Terminate PMPA Franchise Agreement and Franchise Relationship." *Id.* at Ex. B. The company then allowed its former dealers to purchase the gas stations they were previously leasing and continue to sell ExxonMobil branded gasoline if they would agree to sign a distributorship/franchise agreement with three approved ExxonMobil distributors who would supply gasoline to the dealers. *Id.* ExxonMobil held a "dealer meeting" in 2004 to inform dealers of the changes and encouraged them to stay in the ExxonMobil family by entering franchise agreements with the company's distributors. (Pl.'s Reply to Def.'s Mot. For Summary Judgment at 3.) Plaintiff opted to purchase his gas station from ExxonMobil for $500,000 and also entered a distributorship agreement with McPherson Oil, one of ExxonMobil's oil distributors. (Def.'s Mot. for Summary Judgment at 4.)

In 2004, the only written agreement between ExxonMobil and Plaintiff was the sales agreement granting Plaintiff ownership of the gas station. *Id.* at 2. The sales agreement contained no territorial exclusivity provision nor any mention of a "one-mile rule." *Id.* at 3, 4. Plaintiff agrees that such a policy was not in any written agreement but contends that verbal promises were made to him at the 2004 "dealer meeting" that the ExxonMobil distributors Plaintiff contracted with would continue to honor the one-mile policy that had been followed by ExxonMobil. (Pl.'s Reply to Def.'s Mot. For Summary Judgment at 4.) In August 2005, ExxonMobil decided to brand an Exxon station within one mile of Plaintiff's station. This new station would purchase its gasoline supply from Michigan Fuels, one of ExxonMobil's gasoline

distributors and the co-defendant in this lawsuit. (Def.'s Mot. For Summary Judgment at 4.) Plaintiff contends that the branding of a new ExxonMobil station within one mile of his own gas station violated the one-mile policy that he believed was still effective. *Id.* One month after the gas station on Fenkell street was branded an "Exxon" station, Plaintiff filed the present case seeking $100,000,000 in damages. *Id.,* at 5.

**III. STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates that there is no genuine issue as to any material fact. This means that the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.,* 773 F.2d 62 (6th Cir. 1985). To avoid a summary judgment motion, the non-moving party must show some evidence of a disputed fact. *Anderson,* 477 U.S. at 249-50 (citations omitted). The non-moving party fails to show a genuine issue of material fact if it cannot establish the existence of an element essential to that party's case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In other words, the non-movant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun,* 828 F.Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v.Cajon Co.,* 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir. 1983).

## IV. APPLICABLE LAW & ANALYSIS

### A. Breach of Contract, Tortious Interference, Antitrust, and Unjust Enrichment claims.

<u>1. Plaintiff's Breach of Contract claim is dismissed under the Parol Evidence Rule</u>

Plaintiff bases his breach of contract claim on verbal promises allegedly made by ExxonMobil representatives that no ExxonMobil station would be branded within a 1 mile radius of Plaintiff's gas station. There are numerous problems with Plaintiff's contention that Defendant was bound by an oral agreement to adhere to an alleged one-mile policy. First, Plaintiff claims that the "2004 franchise agreement" applies in this case (Pl.'s Resp. to Def.'s Mot. For Summary Judgment at 8.) Plaintiff signed three agreements in 2004:

> 1) a May 17, 2004 sales agreement with ExxonMobil giving him ownership of the gas station, (Def.'s Mot. for Summary Judgment, Ex. E);
>
> 2) a December 31, 2002 franchise termination agreement with ExxonMobil ending their relationship as franchisee and franchiser, (Def.'s Reply to Pl.'s Resp., Ex. B);
>
> 3) a July 14, 2004 franchise agreement with McPherson Oil, one of ExxonMobil's distributors (Def.'s Mot. for Summary Judgment, Ex. G.)

There was no "2004 franchise agreement" between ExxonMobil and Plaintiff and it is therefore unclear which contract ExxonMobil is alleged to have breached. If Plaintiff is arguing that ExxonMobil is in breach of the July 14, 2004 franchise agreement that Plaintiff signed with McPherson Oil, then the claim is not valid because ExxonMobil was not a party to that contract and therefore cannot be in breach of it. If the Plaintiff is asserting that ExxonMobil is in breach of the May 17, 2004 sales agreement that gave Plaintiff ownership of the gas station, then this claim too is invalid because the sales agreement contains no explicit provision guaranteeing

Plaintiff exclusive territory and Plaintiff's reliance on oral evidence of such a provision is barred by the Parol Evidence Rule. *Schmude Oil Co. v. Omar Operating Co.*, 184 Mich. App. 574 (1990). Additionally, the sales agreement contains an integration clause that rejects any modification to the contract.

"Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Id* at 580. There are exceptions to this rule. Parol evidence is admissible to determine whether the contract was intended to be the final agreement between the parties or for purposes of proving that the contract is ineffective because of fraud, illegality, or mistake. *NAG Enterprise, Inc. v. All State Industries, Inc.*, 407 Mich. 407, 410-11 (1979). In *Hamade v. Sunoco Inc.*, 271 Mich. App. 145 (2006), the Michigan Court of Appeals rejected Plaintiff's contention that Sunoco was in breach of contract because the purported breached provisions were not written into the contract but based on oral promises allegedly made to Plaintiff. *Id*. at 169. The Plaintiff in *Hamade* claimed that Sunoco representatives assured him that when Plaintiff signed the contract another Sunoco station would "never" be opened within a few miles of Plaintiff's station. *Id.* at 150. When such a station was authorized, Plaintiff filed suit, claiming breach of contract. The Michigan Court of Appeals held that the verbal promises made could not be used to alter the contract when the contract contained an integration clause and Sunoco was not bound by the verbal promises it had allegedly made. *Id.* at 169.

In this case, just as in *Hamade*, Plaintiff seeks to rely upon evidence that Defendant is in breach of contract provisions that are not explicitly in the sales agreement between the two

parties, but, rather, are verbal promises he alleges were made to him by ExxonMobil representatives at the 2004 "dealer meeting." Plaintiff claims that ExxonMobil representatives assured him before he signed the sales agreement that

> it has an 'internal policy' of not allowing itself or other future Mobil branded gasoline service station franchisees to open Mobil brand gasoline service stations for business within a one mile radius of already existing Mobil stations currently in operation, and that this policy should be considered "part of the deal."

(Pl.'s Comp. at 16-17.) Plaintiff contends that when ExxonMobil approved the new Exxon station within one mile of Plaintiff's station, they breached the verbal promises they made to him. The sales agreement, however, contains no one-mile policy nor any language granting Plaintiff territorial exclusivity. Additionally, the sales agreement contains the following integration clause:

> This Contract, attached exhibits, and the offer letter from Seller, are intended by the parties to be the final, complete and exclusive statement of their agreement. **There are no oral understandings, representations, or warranties affecting the Contract, except as stated herein**. No amendment, addition, modification or waiver of any provision of this Contract shall be effective unless it is in writing and is signed by both parties hereto.

(Def.'s Mot. for Summary Judgment, Ex. E, ¶24.) Plaintiff essentially seeks to alter the written sales agreement between the two parties using evidence of a prior, oral agreement between the parties. This is explicitly prohibited by the Parol Evidence rule. The integration clause unambiguously states that the written instrument is the final agreement between the two parties and all modifications are rejected. Plaintiff may not prove a breach of contract claim when the alleged breach provisions are not valid terms of the contract. Plaintiff's breach of contract claims fails and is DISMISSED.

2. Plaintiff's Federal Antitrust Action Under §1 of the Sherman Act

Plaintiff alleges that ExxonMobil and Michigan Fuel's decision to brand an Exxon station within a mile of Plaintiff's station violated antitrust laws pursuant to the Sherman Act, 15 U.S.C. §1.[2] (Pl.'s Comp. at 8, 12.) To establish a claim under the Sherman Act, the Plaintiff must show that "the questioned practice imposes an unreasonable restraint on competition." *State Oil Co., v. Khan,* 522 U.S. 3, 10 (1997). There are two major types of antitrust conspiracies to restrain trade that individuals or corporations may engage in: horizontal and vertical. *Care Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F. 3d 1008, 1013 (6th Cir. 2005)(quoting *Crane & Shovel Sales, Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988)). Horizontal restraints are agreements among competitors *at the same level of market structure* designed to stifle trade. *Id.* (emphasis added). These include conspiracies among "manufacturers or distributors to fix prices for a given product." *Id.* Vertical conspiracies, however, are "agreements among actors at *different levels* of market structure to restrain trade, 'such as an agreement between a manufacturer and its distributors to exclude another distributor

---

[2] §1 of the Sherman Act states:
> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceed $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. §1.

from a given product and geographic market.'" *Id.* While horizontal restraints on trade are *per se* unlawful and in violation of §1 of the Sherman Act, courts are more flexible when examining vertical restraints on trade because they "possess the 'redeeming virtue' of promoting interbrand competition by permitting the manufacturer to achieve certain efficiencies in the distribution of his products." *Care Heating & Cooling,* 427 F. 3d at 1013 (quoting *Continental T.V. Inc. v. GTE Sylvania Incorporated*, 433 U.S. 36, 54 (1977)). In other words, unlike horizontal restraints, vertical restraints on trade do not simply hurt competition but benefit it in some ways too. As such, when determining the lawfulness of a vertical restraint on trade, a "rule of reason" analysis is applied and a number of factors including the history, nature, and effect of the restraint are considered before it is deemed unlawful. *Khan,* 522 U.S. at 10; *Crane & Shovel Sales Corp.,* 854 F.2d at 806. Under a "rule of reason" analysis, a vertical restraint is unlawful if the plaintiff can show:

> (1) that the defendant(s) contracted, combined, or conspired; (2) that such contract produced adverse anticompetitive effects; (3) within relevant product and geographic markets; (4) that the objects of and conduct resulting from the contract were illegal; and (5) that the contract was a proximate cause of plaintiff's injury.

*Care Heating & Cooling, Inc.*, 427 F.3d at 1014.

In *Care Heating & Cooling, Inc.*, the Sixth Circuit engaged in a "rule of reason" analysis to see whether an alleged vertical restraint on trade violated §1 of the Sherman Act. In that case, Plaintiff, a dealer who sold and serviced heating and cooling equipment, sued Trane, a manufacturer of such equipment, for repeatedly rejecting its requests for a license to sell Trane's products, while granting the same license to Buckeye, a local dealer with whom Plaintiff Care

9

competed. *Id.* at 1014. Plaintiff Care Heating & Cooling alleged that "Trane (the manufacturer and Buckeye (the dealer) ha[d] conspired to prevent Care from competing with Buckey for [heating and cooling] installation work, and, as a result, Care [was unable] to expand its business to compete with Buckey." *Id.* The Michigan Court of Appeals ruled in favor of Defendant because Plaintiff was unable to prove prongs 2, 4, and 5 under the "rule of reason" analysis. The Court opined that Plaintiff Care was not able to make a sufficient showing that the agreement between Trane and Buckey produced results against competition (prong 2) or that Defendants' practice was the proximate cause of Plaintiff's antitrust injury (prong 5) because Plaintiff Care had not actually suffered any *antitrust* injury. *Id.* (emphasis added). The Sherman Act "was intended to protect competition and the market as a whole, not individual competitors" *Id.* at 1014 (citations omitted). Antitrust injuries can only be claimed if they show an adverse effect on the entire market, not just on one individual. *Id.* The fact that Care was unable to expand its business as a result of the vertical conspiracy between the Defendants is not an injury covered under the Sherman Act. *Id.* Plaintiff Care was also unable to prove the prong 4 under the "rule of reason" analysis because it pled no facts that pointed to any illegal conduct between the Defendants as a result of the agreement between them and the Court rejected Plaintiff's antitrust claims under §1 of the Sherman Act. *Id.*

In the present case, Plaintiff alleges a vertical conspiracy between ExxonMobil and one of its dealers, Michigan Fuels. Plaintiff argues that the two parties conspired against him and caused him to lose business by deciding to brand an Exxon station near his own gas station. Plaintiff's claim fails for the same reasons as the claim in *Care Heating & Cooling*. Plaintiff

alleges only an individual injury to his business, claiming that the new gas station was so near his that it caused him to lose customers and suffer monetary damages. Plaintiff asserts no facts that show that the actions of ExxonMobil and Michigan Fuels created an adverse market-wide effect that hurt competition. The alleged injury suffered by Plaintiff is an individual one, and not an antitrust injury covered by the Sherman Act. Additionally, Plaintiff does not plead any facts that prove that ExxonMobil and Michigan Fuels' decision to brand an Exxon station near Plaintiff was illegal behavior.

Plaintiff also claims that there is an antitrust violation in the requirement imposed on it by Michigan Fuels that it purchase a certain amount of gasoline from it every year. Plaintiff claims that this prevents him from shopping around for gasoline at a cheaper price. (Pl.'s Resp. to Def.'s Summary Judgment Motion at 16.) This is also not an antitrust violation because Plaintiff has not shown an injury to the market, the injury is personal to the Plaintiff, and none of the alleged actions of the Defendants are illegal. Plaintiff is unable to meet the necessary elements to sustain an antitrust claim under the Sherman Act. For these reasons, this Court finds that Plaintiff's antitrust claims under the Sherman Act fail as a matter of law.

### 3. Plaintiff's State Antitrust Claims Pursuant to the Michigan Antitrust Reform Act

Plaintiff also alleges state antitrust claims against the Defendant under §§445.772 and 445.773 of the Michigan Antitrust Reform Act ("MARA") claiming that the Defendants conspired against him to restrain trade and maintain a monopoly. (Pl.'s Comp. at 12.) These two sections of MARA are modeled after the restraint of trade (§1) and monopoly (§2) sections of the Sherman Act. The Michigan courts have held that it is appropriate to interpret provisions of

MARA based on interpretations of similar provisions in the Sherman Act. *Blair v. Checker Cab Co.,* 219 Mich. App. 667, 675 (1996). ("In construing all sections of [MARA], the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes.")("MARA and the Sherman Act require similar evidence.") Plaintiff's state antitrust claims under §445.772 of Michigan Antitrust Reform Act fail for the same reasons that its "restraint of trade" theory failed under §1 of the Sherman Act (see analysis above).

Plaintiff's monopolization theory under § 445.773 of MARA also fails. This section is modeled after §2 of the Sherman Act and makes it unlawful to establish and maintain a monopoly for the purpose of excluding or limiting competition. M.C.L.A §445.773. To prove that a monopoly has been established under §2 of the Sherman Act, the Plaintiff has to show 1) specific intent to monopolize, 2) anticompetitive conduct, and 3) a dangerous probability of success in achieving monopoly power. *Brighton Optical, Inc. v. Vision Service Plan,* 422 F.Supp.2d 792, 806 (E.D. Mich. 2006). The Plaintiff in the present case fails to make a showing that such a monopoly was maintained by the Defendants. First, Plaintiff pleads no facts in his complaint that show Michigan Fuels and ExxonMobil entered an agreement to brand a new Exxon station with an intent to maintain a monopoly. Defendants point out in their Summary Judgment motion that Plaintiff's principal, Ali Bazzy, stated in a deposition that he had no idea what the intent or reason was behind the branding of a new Exxon station except that he thought it was a favor that ExxonMobil was doing for Michigan Fuels (Def.'s Mot. for Summary Judgment at 14.) Second, Plaintiff does not offer sufficient evidence of anti-competitive conduct. Under the previous analysis for §1 of the Sherman Act, it was established that there was in fact

no anticompetition effect of Defendant's actions nor was there an antitrust injury since Plaintiff was only claiming a personal injury and not a market-wide one.

Lastly, Plaintiff does not make any showing that Defendant had a dangerous probability of monopolization. In order to determine whether such a probability exists, "courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in the market." *Brighton Optical, Inc.,* 422 F.3d at 806. This essentially means that the Court must look at the defendant's share of the relevant market and whether the monopoly has created significant entry barriers for other businesses. *Id.* (citations omitted). The Plaintiff does not make such a showing in his pleadings. The Plaintiff presents no facts to show that ExxonMobil has a monopoly in the relevant market, or any power to exclude competition. (Def.'s Mot. for Summary Judgment at 12). Defendant ExxonMobil claims that it has no such power in the Metro Detroit area. *Id.* at 13. Plaintiff is unable to establish any of the elements necessary to sustain a monopolization claim against Defendants and his claim fails as a matter of law.

### 4. Plaintiff's Unjust Enrichment Claim

Plaintiff claims that Defendant was unjustly enriched because of the retaining of an option to repurchase the gas station from Plaintiff for the original price if Plaintiff does not buy the required amount of gasoline from Michigan Fuels, ExxonMobil's distributor.(Pl.'s Comp. at 19.)Plaintiff admits, however, that it included the unjust enrichment claim in the complaint in case it became applicable at some future time. (Pl.'s Resp. to Def.'s Summary Judgment Mot. at 19-20.)  This claim is now invalid since the Defendant has not yet failed to purchase the required

amount of gas from Michigan Fuels nor has ExxonMobil made any representations that it will exercise its option to repurchase the gas station from Plaintiff. (Def.'s Mot. for Summary Judgment at 19-20.) Both parties stipulate that unjust enrichment has not yet occurred and the claim is dismissed.

### 5. Plaintiff's Tortious Interference Claim

Plaintiff alleges that the opening of an Exxon branded station within one mile of Plaintiff's gas station in violation of the one-mile rule, was "done with the intent to, and did, interfere with the business contracts, relationships, and expectancies, causing their breach, disruption and termination." (Pl.'s Comp. at 21.) Plaintiff claims that he had certain advantageous business expectations of sales and profits based on the fact that he believed he would be the sole ExxonMobil station in the area. (*Id*. at 20.) Plaintiff claims that Defendant had knowledge of this expectation and when Exxon decided to brand another Exxon station near Plaintiff's, Exxon interfered wrongfully with that expectation. In order to prove a claim for tortious interference with an advantageous business expectancy, Plaintiff must show 1) existence of a valid business relationship or expectancy, 2) knowledge of the relationship or expectancy on the part of the defendant, 3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship or expectancy, and 4) resultant damage to the plaintiff. *BPS Clinical Laboratories v. Blue Cross and Blue Shield of Michigan,* 217 Mich. App. 687, 698-99 (1996) (quoting *Lakeshore Community Hosp. v. Perry*, 212 Mich. App. 396, 401 (1995)). In order to prevail on such a claim, the Plaintiff must "demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Id.* (quoting

*Feldman v. Green,* 138 Mich. App. 360, 369 (1984)). If the Defendants' actions were "motivated by legitimate business reasons, its actions would not constitute improper motive or interference. *Id.* (quoting *Michigan Podiatric Medical Ass'n v. Nat'l Foot Care Program, Inc.,* 175 Mich. App. 723, 736 (1989)).

Plaintiff has not successfully established the necessary elements for tortious interference nor shown wrongdoing on the part of Defendants. First, Plaintiff's expectation that no Exxon gas station would open near his is invalid. This expectation was based on alleged verbal promises that were clearly waived when the Plaintiff signed a sales agreement with an explicit integration clause. Additionally, Defendants had no knowledge of this expectation since they claim in all of their pleadings that no such one-mile promise was made and that they were not aware of Plaintiff's expectations. Lastly, Plaintiff does not provide specific evidence of affirmative acts by ExxonMobil and Michigan Fuels that corroborate the alleged improper motive and interference. Simply opening a new gas station, when there is no contract provision barring Defendant from doing so, is not evidence of improper motive or intent to interfere. No proof is put forth to sufficiently support the elements of this claim, and it fails as a mater of law since there are no genuine issues of fact as to whether ExxonMobil tortiously interfered with Plaintiff's profit expectations.

**B. Plaintiff's Motion to Amend the Complaint**

Plaintiff seeks to amend its complaint, under Fed. R. Civ. P. 15(a). (Pl.'s Mot. to Amend at 3.) In the new complaint, Plaintiff alleges that Defendants' actions violated the Michigan Franchise Investment Law, M.C.L.A § 445.1508. Plaintiff also adds a fraud in the inducement

15

label to the breach of contract claim and makes a small change to the antitrust claims. A leave to amend should be "freely given when justice so requires." FRCP 15a. However, "leave to amend may be denied when it would result in undue delay or prejudice to the opposing party ... or where the amendment is futile." *Forman v. Davis,* 371 U.S. 178 (1962); *Duchon v. Cajon Co.,* 791 F.2d 43 (6th Cir. 1986). Prejudice to the opposing party is inherent if the motion to amend occurs after the close of discovery. *Miller v. Admin Office of Courts,* 448 F. 3d 887, 898 (6th Cir. 2006) (holding that "[b]ecause the discovery deadline had already passed and the deadline for filing dispositive motions ... was imminent, the defendants would have been prejudiced if a further amendment had been permitted"); *Duggins v. Steak N' Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999) ("allowing amendments after the close of discovery creates significant prejudice and other Circuits agree"); *Williams v. Detroit Bd. of Educ.,* 2007 WL 2638790, *2 (Sept. 6, 2007, E.D. Mich) (holding that it was too late in the proceedings to allow amendment because it was well past discovery deadline and one summary judgment motion had already been decided by the judge).

In the present case, the deadlines for discovery and summary judgment were July 3, 2007 and July 16, 2007, respectively. The Plaintiffs have waited well past the discovery deadline to file a motion to amend and this will prejudice the defendants because they will not have a chance to conduct discovery on the new claims, unless discovery is re-opened by this Court. Amending the motion at such a late point in the proceedings is unfair to the Defendants and causes undue delay. This case has been pending for over two years now and Plaintiffs could chosen an earlier date to seek to amend their original complaint to include the new claims.

Plaintiff's new claims are not only prejudicial to the defendants but are also futile. The legal theories advanced by Plaintiff are not pleaded with any specificity and may not survive a summary judgment motion. The Plaintiff's new complaint asserts that Defendants violated the Michigan Franchise Investment Law when it failed to include a disclosure statement in its sales and franchise agreements that specified the policy on territorial protection.(Pl.s' Amend. Comp. at 20.) The MFIL states that all franchisers must provide franchisees a disclosure statement that includes, among other things, whether or not the franchisee will have territorial exclusivity. M.C.L.A. § 445.1508(s). Plaintiff's argument is flawed because it fails to recognize that it no longer has a franchise agreement with ExxonMobil. The franchise agreement between Plaintiff and ExxonMobil that existed between 2000 and 2004 was explicitly terminated through an "Agreement to Mutually Terminate PMPA Franchise Agreement and Franchise Relationship." (Def.'s Reply to Pl.'s Resp., Ex. B). The agreement explicitly stated that "[t]he Franchise Agreement, franchise and franchise relationship between the parties ... shall terminate contemporaneously with the execution of the ... sale of the Station." *Id.* After the termination of the franchise agreement, ExxonMobil only had a distributorship contract with McPherson Oil, one of its distributors, and it was McPherson Oil that had a franchise agreement with Plaintiff. Plaintiff's claim that ExxonMobil violated a *franchise* law is unsupportable.

Plaintiff's re-labeled contract claim which now includes a fraud in the inducement charge is also futile. Plaintiff continues to plead the breach of contract claim but now also alleges that ExxonMobil fraudulently induced Plaintiff into signing a distributorship agreement with its distributor McPherson Oil by promising Plaintiff that there would be no other ExxonMobil

17

station near him. (Pl.'s Amend. Comp. at 15.) The breach of contract claim fails for the same parol evidence reasons noted earlier. The Michigan Court of Appeals has also held that parol evidence cannot be used to prove fraud in cases where the only evidence of fraud is oral agreements that were rejected by the Defendant when the two parties signed a contract including an integration clause. *Hamade,* 271 Mich. App. at 170. In the present case, Plaintiff's entire fraud claim is based on oral representations that are precluded upon the signing of a contract containing a proper integration clauseThe integration clause specifically stated that all previous oral agreements were not binding. Under *Hamade*, Plaintiff can not use parol evidence to prove fraud when the fraud is based entirely on oral agreements that were released with the signing of a contract containing an integration agreement. Plaintiff's fraud claim is invalid and it is futile to allow Plaintiff to amend his complaint to include it. For the above mentioned reasons, this Court finds that Plaintiff's Motion to Amend is DENIED..

V. CONCLUSION

Accordingly,

IT IS ORDERED that Defendants ExxonMobil Oil Corp., and Michigan Fuels' Summary Judgment Motion [Docket No. 75] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend [Docket No. 81] is **DENIED**.

IT IS FURTHER ORDERED that the case is **DISMISSED WITH PREJUDICE**.

                                      S/Denise Page Hood  
                                      Denise Page Hood  
                                      United States District Judge

Dated: March 31, 2008

      I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2008, by electronic and/or ordinary mail.

                                      S/William F. Lewis  
                                      Case Manager